# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| HCperf Holdings B.V., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-20-02969 |
| | § | |
| GD Development Corporation and | § | |
| Oil States International, Inc., | § | |
| | § | |
| Defendants. | § | |

---

**Defendants GD Development Corp. and Oil States International, Inc.'s Motion to Dismiss Under Rule 12(b)(1) for Lack of Subject-Matter Jurisdiction**

---

**BISSINGER, OSHMAN & WILLIAMS LLP**

David K. Bissinger (Attorney-in-Charge)
Email: dbissinger@bowllp.com
State Bar No. 00790311
S.D. Tex. No. 18150
Jason E. Williams
Email: jwilliams@bowllp.com
State Bar No. 24047113
S.D. Tex. No. 569335
2229 San Felipe, Suite 1500
Houston, Texas 77019
Telephone: (713) 524-8811
Facsimile:  (713) 583-8347

**Counsel for Defendants
GD Development Corp. and
Oil States International, Inc.**

## Table of Contents

1.    **Nature and Stage of the Proceedings** ........................................................... 1

2.    **Facts** ............................................................................................................. 2

    a.    HCperf/Lime Rock's Houston nerve center ...................................... 2

    b.    Potential need for further discovery as to citizenship of HCperf's members ............................................................................................ 7

    c.    The Promissory Note is not due and payable because an intervening dispute has "modified and extended" its maturity date ................................................................................................... 7

3.    **Standard of Review – Lack of Subject-Matter Jurisdiction Under Rule 12(b)(1)** ........................................................................................................ 10

4.    **Summary of Argument** ................................................................................ 11

5.    **Argument and Authorities** ......................................................................... 11

    a.    The Court must dismiss under Rule 12(b)(1) because HCperf's Houston nerve center destroys diversity jurisdiction ........................ 12

    b.    Alternatively, the Court should allow limited discovery of HCperf's citizenship because of its likely Texas-based membership ...................................................................................... 14

    c.    Even if this Court finds that it has diversity jurisdiction, the Court should dismiss the promissory-note claim for lack of ripeness ........................................................................................... 15

6.    **Conclusion and Prayer** ............................................................................... 16

# Table of Authorities

## Cases

*Association of American Physicians & Surgeons v.*
*U.S. Health & Human Services,*
224 F. Supp. 2d 1115 (S.D. Tex. 2002) ........................................................ 15

*Carden v. Arkoma Associates,*
494 U.S. 185 (1990)........................................................................................ 14

*Clark v. Tarrant Cty.,* 7
98 F.2d 736 (5th Cir. 1986) .......................................................................... 10

*Cuington v. Cruz,*
Civil Action No. 3:18-CV-3278; 2019 U.S. Dist.
LEXIS 6924 (N.D. Tex., Jan. 15, 2019) ...................................................... 12

*Garcia v. Copenhaver, Bell & Assocs.,*
104 F.3d 1256 (11th Cir. 1997) .................................................................... 10

*Harvey v. Grey Wolf Drilling Co.,*
542 F.3d 1077 (5th Cir. 2008) ...................................................................... 14

*Hertz Corp. v. Friend,*
559 U.S. 77 (2010)................................................................................... 12, 13

*Kokkonen v. Guardian Life Ins. Co.,*
511 U.S. 375 (1994)................................................................................. 10, 11

*Life Partners, Inc. v. Life Ins. Co. of N. America,*
203 F.3d 324 (5th Cir. 1999) ........................................................................ 15

*Lower Colo. River Auth. v. Papalote Creek II LLC,*
858 F.3d 916 (5th Cir. 2017) ........................................................................ 15

*Manguno v. Prudential Prop. & Cas. Co.,*
276 F.3d 720 (5th Cir. 2002) ........................................................................ 10

*MCG, Inc. v. Great W. Energy Corp.,*
896 F.2d 170 (5th Cir. 1990) ........................................................................ 11

*New Orleans Pub. Serv., Inc. v. Council of New Orleans,*
833 F.2d 583 (5th Cir. 1987) ........................................................................ 15

*Nomura Asset Accept. Corp. v. Nomura Credit & Capital, Inc.*,
    27 F. Supp. 3d 487 (S.D.N.Y. 2014)....................................................... 14

*Orix Credit Alliance, Inc. v. Wolfe*,
    212 F.3d 891 (5th Cir. 2000) ...................................................................... 15

*United Public Workers of America v. Mitchell*,
    330 U.S. 75 (1947) ....................................................................................... 15

*United Transportation Union v. Foster*,
    205 F.3d 851 (5th Cir. 2000) ...................................................................... 15

*VanLue v. Schoeller Bleckmann Am., Inc.*,
    Civil Action No. H-18-3608; 2018 U.S. Dist. LEXIS
    1887828; 2018 WL 5791957 (S.D. Tex., Nov. 5, 2018) ..................... 11, 12, 13

*Williamson v. Tucker*,
    645 F.2d 404, 413 (5th Cir. 1981) ............................................................. 10

**Statutes**

28 U.S.C. § 1332(a) ............................................................................................ 14

28 U.S.C. § 1332(c)(1).......................................................................................... 12

Fed. R. Civ. P. 12(b)(1)................................................................................ 10, 11, 12, 16

Fed. R. Civ. P. 12(h)(3)........................................................................................ 11

Fed. R. Evid. 201(b)(2) ........................................................................................ 5

Fed. R. Evid. 801(d)(2)(A) ................................................................................... 5

Fed. R. Evid. 801(d)(2)(D) ................................................................................... 5

Fed. R. Evid. 803(17)......................................................................................... 5, 6

Fed. R. Evid. 807 ................................................................................................. 6

4823-3763-6302, v. 1

## 1. Nature and Stage of the Proceedings

Until early 2018, a group of private-equity managers at Lime Rock Partners and/or Lime Rock Capital (collectively, "Lime Rock") owned GEODynamics, Inc., a Texas-based oilfield technology business, through a Dutch parent, GEODynamics, B.V. GEODynamics, B.V. sold GEODynamics, Inc. to GD Development Corp. ("GD Development"), a wholly owned subsidiary of Oil States International, Inc. ("Oil States"), in a sale that closed on January 12, 2018. Oil States is a Houston-based oilfield services company. Lime Rock presumably used the Dutch entity for tax purposes. After the sale, Lime Rock renamed GEODynamics, B.V. to HCperf B.V. ("HCperf"). Now the Houston-area Lime Rock managers, acting through HCperf, have sued GD Development and Oil States.

Before addressing the merits, this Court must first address whether it has subject-matter jurisdiction. It does not. Despite its Dutch legal status, HCperf's nerve center is at Lime Rock's offices in Houston, Texas. HCperf's supposed Dutch presence appears to arise from nothing more than a third-party corporate-service provider, Intertrust, B.V. HCperf's real decision makers work in downtown Houston, about a block from GD Development and Oil States. Because both HCperf and GD Development/Oil States have their "nerve centers" in Houston, Texas, no diversity jurisdiction exists – regardless of HCperf's status as a foreign entity.

Furthermore, and in the alternative, HCperf describes itself as a "limited liability company." As a limited liability company, the Court must examine HCperf's constituent members for diversity purposes. In other words, to the extent the Court disagrees that HCperf's nerve center is in the same state as GD Development/Oil States's, the Court should allow limited jurisdictional discovery so that the Court can determine the citizenship of HCperf's members.

In addition to lacking diversity jurisdiction, the Court should dismiss HCperf's claim on the promissory note because the maturity date of the promissory note has been modified and

extended by its own terms as a result of an unresolved dispute of up to $70 million that HCperf

may owe as a setoff to the $25 million in principal under the promissory note. Under the note's

terms, the pendency of that dispute modifies and extends the maturity date of the note until the

dispute over the setoff is resolved.

## 2. Facts

### a.   HCperf/Lime Rock's Houston nerve center

HCperf styles itself as "a Netherlands private limited liability company with its ***principal***

***offices***" in Amsterdam. Complaint ¶ 6, at 2 (ECF 1) (emphasis added). Whatever HCperf may

intend by the use of the term "principal offices," for purposes of diversity jurisdiction, the Court

must focus on HCperf's "principal place of business." Based on the available public evidence,

HCperf has its principal place of business – its nerve center – in the offices of Lime Rock Partners

on the forty-sixth floor of the former Texaco Heritage Plaza (now known as the "Heritage Plaza")

at 1111 Bagby in downtown Houston. Lime Rock Partners lists its Houston address on its website,

https://www.lrpartners.com/contact (Exhibit A) (last accessed 10/2/2020[1]). Lime Rock's offices

are approximately a five-minute walk from GD Development/Oil States's corporate offices at 333

Clay, as the map below (also attached as Exhibit B) illustrates:

---

[1] The declarations of Shana Oliver and David Bissinger, filed concurrently with this motion,
authenticate the exhibits cited herein.



*Google Maps walking directions from Lime Rock/HCperf to Oil States/GD Development*
*(Exhibit B)*

The documents between HCperf and GD Development leading up to this dispute show that the direction, control, and coordination of HCperf's activities all come from Lime Rock's Houston offices, including Lime Rock/HCperf executives Benjamin Burns and Will Franklin. Their Lime Rock and LinkedIn biographies (showing their location as Houston) are attached as Exhibit C and Exhibit D, with excerpts below, along with excerpts of correspondence they signed on letterhead (attached as Exhibit E and Exhibit F and also excerpted on the following page):



*Excerpts of LinkedIn biographies of Lime Rock's Burns and Franklin and*
*their signatures on HCperf correspondence (Exhibits C-F)*

4823-3763-6302, v. 1

At first HCperf/Lime Rock used letterhead that purported to come from Amsterdam. Later they abandoned that pretense.

The Court can take judicial notice of Lime Rock Partners' address and the proximity of its offices to Oil States's under Federal Rule of Evidence 201(b)(2) because both of these matters can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Moreover, the Court can admit into evidence the LinkedIn biographies of HCperf's/Lime Rock's Burns and Franklin under FRE 803(17) because LinkedIn is a "director[y] or other compilation[] that [is] generally relied on by the public or persons in particular occupations." Their biographies are also party statements admissible under FRE 801(d)(2)(A) and 801(d)(2)(D).

All or nearly all of HCperf's presuit correspondence concerning this dispute was executed by HCperf's Burns and Franklin here in Houston. This and related correspondence between GD Development/Oil States and HCperf's directors, controllers, and coordinators at Lime Rock appear in Exhibit G. To the extent HCperf denies that Lime Rock's Burns and Franklin sent these emails and letters from Houston, asserts that they sent them from Amsterdam, or contends that Burns and Franklin are not the controlling managers of HCperf, GD Development and Oil States request jurisdictional discovery to determine their origin.

Based on all the available evidence, however, no need exists to conduct jurisdictional discovery. Enough of the available evidence shows that HCperf's Dutch location has little if anything to do with the actual center of its operations. For example, HCperf's available corporate resolutions purport to show board of directors meetings in Amsterdam, but a cursory internet search shows that HCperf's Dutch board members had little operational role in the company. HCperf's available resolutions of its management board list two Dutch directors: Linda Kuiters and Gert Jan Rietberg. True and correct copies of these resolutions are attached as Exhibit H and

Exhibit I. Both Ms. Kuiters and Mr. Rietberg signed these documents while working for a Dutch corporate-services provider, Intertrust, N.V., according to their internet biographies. *See* Exhibit J and Exhibit K. (Ms. Kuiters appears to have since left Intertrust to form her own corporate-services firm, according to her LinkedIn biography.) Nowhere in their biographies do Ms. Kuiters or Mr. Rietberg list HCperf or its predecessor, GEO Dynamics, B.V., as directorships they held. Instead, Lime Rock appears to have used Ms. Kuiters, Mr. Rietberg, and Intertrust to form and administer the Dutch "B.V." entity for favorable tax treatment and not because of any edge a Dutch finance manager (Kuiters) or Dutch lawyer (Rietberg) had in oilfield technology. Intertrust's Annual Report states "[w]e operate in low-taxed or no-tax jurisdictions for legitimate and justifiable non-tax business reasons."[2] The third director who signed these resolutions, Ben Smith, worked for GEODynamics in Texas. *See* Oliver Decl. ¶ 16, at 3 (noting that Smith was the Chief Financial Officer of GEODynamics and remains employed there); *see also* Exhibit M (Smith's LinkedIn biography).

Regardless of Lime Rock's intent, the available correspondence relating to the GEODynamics transaction shows no active managerial involvement from either Ms. Kuiters or Mr. Rietberg in the direction, control, or coordination of HCperf's operations. *See generally* Exhibit G (emails between Lime Rock and Oil States regarding HCperf and GD Development). In light of these facts, HCperf's allegation of Netherlands as the location of its "principal offices," Complaint ¶ 6, at 2 (ECF 1), and not its "principal place of business," leaves little question that its presence in the Netherlands was in name only, and not the center of its business operations.

---

[2]   https://www.intertrustgroup.com/~/media/Files/I/Intertrust-Group/documents/investors/2019/q4-2019/intertrust-nv-annual-report-2019.pdf (excerpts attached hereto as Exhibit L, admissible under FRE 803(17) as a compilation generally relied on by persons in the occupations of investment banking and securities trading as well as under FRE 807 because of its sufficient guarantees of trustworthiness and probative value relative to other evidence reasonably available).

6

**b.   Potential need for further discovery as to citizenship of HCperf's members**

HCperf alleges that it is a "limited liability company." Complaint ¶ 6, at 2. However, as explained in detail in Section 5 of this motion (page 14-15 below), a Court must not rely on the citizenship of a limited liability company for purposes of determining diversity jurisdiction. GD Development and Oil States believe that at least some of HCperf's constituent members, when traced to either the individual or corporation level, are Texas citizens affiliated with Lime Rock. However, without more information, GD Development and Oil States lack evidence of the citizenship of HCperf's members.

**c.   The Promissory Note is not due and payable because an intervening dispute has "modified and extended" its maturity date**

HCperf alleges that the Promissory Note at issue in this case was "due and payable" on July 12, 2019. *See* Complaint ¶ 15 (ECF 1), at 4 & Ex. A at 1 (ECF 1-2). As HCperf's 13-month delay in filing suit over the Promissory Note suggests, however, this is not the correct due date. HCperf omits a central provision of the Promissory Note that modifies and extends the "Maturity Date." That provision, Section 4 of the Promissory Note, extends and modifies the Maturity Date in the event defendant GD Development has setoff right for any "Buyer Indemnified Loss." *Id.* Specifically, Section 4 provides:

> 4.   <u>Right of Withholding and Set-Off</u>. This Note is ***subject to the right of Maker*** [GD Development] to ***setoff payments*** due hereunder against any ***Buyer Indemnified Loss*** pursuant to Article VIII of the [Stock Purchase] Agreement [ECF 1-1, at 64 of 99] (each, a "<u>Setoff Amount</u>")....
>
> If  Maker has notified Payee in writing of any claim for a Setoff Amount, and the amount of such Setoff Amount or any portion thereof has ***not been determined or resolved*** in accordance with Article VIII of the [Stock Purchase] Agreement prior to the Maturity Date, ***the Note will be deemed modified and extended*** so that the portion of the outstanding balance of the Note equal to such Setoff Amount, or portion thereof, in controversy shall not be due until ten (10) business days after its resolution pursuant to the Agreement.

Promissory Note at 1 (ECF 1-2) (emphasis added).

The term "Buyer Indemnified Loss" includes, among other things, undisclosed taxes due and owing under Section 8.2(e) of the Stock Purchase Agreement. *See* ECF 1-1, at 64 of 99.

Shortly after closing, Oil States learned that the company it bought from HCperf, GEODynamics, Inc., may have failed to pay as much as $35 million to $70 million in antidumping and other customs duties for steel that GEODynamics, Inc. had imported from China. Oil States/GD Development notified HCperf of this material nondisclosure and duly issued a claim for a "Buyer Indemnified Loss." *See* Exhibit N (GD Development's original notice of Buyer Indemnified Loss, 6/26/2018). Oil States/GD Development learned of this issue because of "binding rulings" by the U.S. Customs and Border Protection ("CBP") and related proceedings against one of GD Development's competitors covering similar products. *See, e.g.*, Exhibit O (9/5/2018 letter to HCperf).

GD Development supplemented this claim with a Second Claim Notice dated November 13, 2018, stating that:

> **Buyer** [GD Development/Oil States] **reiterates its claim for indemnification for a Buyer Indemnified Loss** under Section 8.2 of the [Stock Purchase] Agreement related to US Government assessed Anti-Dumping Duties and Countervailing Duties **for tubular goods imported from China** over the past five (5) years in the amount of $35.0 MM to $70.0 MM (Thirty Five Million Dollars to Seventy Million Dollars)….
>
> Buyer, with Seller's [HCperf/Lime Rock's] consent and acknowledgement of the information contained in the Initial Claim Notice, subsequent developments of that initial information, and the strategy proposed during numerous communications between Seller, Buyer, and their respective counsels, submitted an initial prior disclosure to the CBP [Customs and Border Protection] on September 13, 2018….

Exhibit P, at 2 (11/13/2018) (emphasis added). Although HCperf attempted to dispute this claim, J. William Franklin responded on behalf of HCPerf with two material concessions. First, HCperf acknowledged, "we do agree that Customs may take the position that additional duties are owed on such imports in question as a result of the recent scope ruling with regards to DynaEnergetics

[the competitor against whom adverse rulings alerted Oil States and GD Development to the issue]." Exhibit Q (11/30/2018). Second, HCperf acknowledged the claim: "Notwithstanding that, in the interest of agreeing on how to proceed, we will treat your November 13 letter as a Claim Notice." *Id*.

GD again reiterated its claim for $35 million to $70 million in Buyer Indemnified Losses in July 2019 to make clear that the pending customs-duties dispute modified and extended the Maturity Date under the Promissory Note. Specifically, on July 11, 2019, GD Development notified HCperf that "the amounts owed to a Buyer Indemnitee [here, GD Development] ***shall be set off against the unpaid amount of the Seller's Note***" [the Promissory Note] and that "according to Section 4 of the Seller's Note, Maker [GD Development] has notified Payee [HCperf] in writing of a claim for a Setoff Amount." Exhibit R, at 1 (7/11/2019) (emphasis added).

In response to GD Development's notification of the modification and extension of the Note's maturity date, HCperf acknowledged the issue and sought to renegotiate the Note to avoid the modification and extension provision in the Note. In a letter dated July 15, 2019, HCperf's J. William Franklin wrote to GD Development, enclosing a proposed amendment with a new maturity date, stating:

> As referenced in your July 11, 2019 letter, Buyer [GD Development] and Seller [HCperf] have ***agreed to work together to pursue resolution of these matters***, while each of us reserved all of our rights under the Agreement with regards to liability for such matters.
>
> In light of the circumstances involving Customs and the gun carrier tubing, we are unwilling to extend the Seller's Note for an indefinite and unlimited period. Instead, ***we propose that the Agreement and the Seller's Note be amended*** as set forth in Exhibit A hereto to reflect an extension to November 13, 2019.

Exhibit S, at 1-2 (7/15/2019) (emphasis added). This letter, and the enclosed proposed amendment to the Note, reflects HCperf's implicit admission that the pending customs-duties dispute did, in fact, modify and extend the Promissory Note; why else would HCperf seek an amendment to the

Note that imposed a maturity date of November 13, 2019 that appears nowhere in the Note itself? Not surprisingly, GD Development refused to amend the Note. HCperf had highly skilled and savvy lawyers assisting it in negotiating this transaction. If it had wanted to uncouple its claim on the Note from tax disputes such as this, and avoid a modification and extension of the Maturity Date, the time to seek that uncoupling and insist on a drop-dead maturity date occurred before signing the documents in 2017 and 2018, not a year and a half after closing.

In sum, no question exists that the pending dispute regarding unpaid customs duties has "modified and extended" the Maturity Date of the Note until Oil States can resolve the pending customs-duties dispute with the United States government.

### 3. Standard of Review – Lack of Subject-Matter Jurisdiction Under Rule 12(b)(1)

The standard of review for a district court's dismissal under Fed. R. Civ. P. 12(b)(1) is *de novo*. A court takes the well-pleaded factual allegations of the complaint as true and views them in the light most favorable to the plaintiff. HCperf, as the party asserting jurisdiction, bears the burden of proof – by a preponderance of the evidence – for surviving a Rule 12(b)(1) motion. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (burden on party asserting jurisdiction); *Manguno v. Prudential Prop. & Cas. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (preponderance of evidence). As Chief Judge Rosenthal explained in a recent decision:

> "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cty.*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). When examining a factual challenge to subject-matter jurisdiction that does not implicate the merits of plaintiff's cause of action under Rule 12(b)(1), the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997); *see also Clark*, 798 F.2d at 741. The court may consider matters outside the pleadings, such as testimony and affidavits. *See Garcia*, 104 F.3d at 1261.

*VanLue v. Schoeller Bleckmann Am., Inc.*, Civil Action No. H-18-3608; 2018 U.S. Dist. LEXIS 1887828, *7; 2018 WL 5791957 (S.D. Tex., Nov. 5, 2018).

### 4. Summary of Argument

GD Development and Oil States move the Court to dismiss the Complaint for three reasons:

First, the Court must dismiss under Rule 12(b)(1) because HCperf's Houston nerve center destroys diversity jurisdiction.

Second, alternatively, the Court should allow jurisdictional discovery into HCperf's membership to determine whether HCperf's constituent members lack complete diversity from GD Development or Oil States.

Third, even if this Court finds that it has diversity jurisdiction, the Court should dismiss for lack of subject-matter jurisdiction HCperf's promissory-note claim because the pending dispute over unpaid customs duties has yet to be resolved and is therefore not ripe. The Promissory Note's terms modify and extend the Maturity Date indefinitely until ten (10) business days following resolution of that dispute.

### 5. Argument and Authorities

Because federal courts are courts of limited jurisdiction, they presume no federal subject-matter jurisdiction exists. The burden of establishing the contrary rests on the party seeking to invoke the federal court's jurisdiction. *Kokkonen*, 511 U.S. at 377. That is why "federal courts, both trial and appellate, have a continuing obligation to examine the basis for their jurisdiction." *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990). "The issue may be raised by parties, or by the court *sua sponte*, at any time." *Id.* "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *Id.*, citing Fed. R. Civ. P. 12(h)(3).

### a. The Court must dismiss under Rule 12(b)(1) because HCperf's Houston nerve center destroys diversity jurisdiction

Because HCperf's nerve center – its principal place of business – is in Houston, not Amsterdam, no diversity jurisdiction exists over the case HCperf has brought against its downtown neighbors at Oil States and GD Development.

Under 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its ***principal place of business*** . . ." (Emphasis added.) Here, the Complaint alleges that "Plaintiff HCperf is a Netherlands private limited liability company with its ***principal offices*** located at Prins Bernhardplein 200, Amsterdam, 1097 JB Netherlands." Complaint ¶ 1, ECF 1, at 2 (emphasis added). HCperf fails to allege its "principal place of business," and thus fails to "adequately inform the court" of its "citizenship for purposes of establishing diversity jurisdiction." *Cuington v. Cruz*, Civil Action No. 3:18-CV-3278; 2019 U.S. Dist. LEXIS 6924 *3 (N.D. Tex., Jan. 15, 2019).

Chief Judge Lee Rosenthal's recent *VanLue* decision quoted above explains the "nerve center" doctrine. Section 1332 contains no definition of "principal place of business"; this makes the phrase "more difficult to apply than its originators likely expected." *VanLue*, 2018 U.S. Dist. LEXIS *8. Thus, "[t]he Supreme Court sought to end this confusion in *Hertz Corp. v. Friend*, 559 U.S. 77, 89 (2010)," adopting the "nerve-center test." *Id.* Under the nerve-center test, "principal place of business" means that place where "a corporation's officers ***direct, control, and coordinate the corporation's activities***." *Id.*, quoting *Hertz*, 559 U.S. at 92-93 (emphasis added). According to the Supreme Court, Chief Judge Rosenthal explains, "[t]he nerve center 'should normally be the place where the corporation maintains its headquarters—***provided that*** the headquarters is the actual center of direction, control, and coordination.'" *Id.* (emphasis added).

However, as Chief Judge Rosenthal observes, the Supreme Court cautions that "***district courts should not be bound by formalities*** because that would allow jurisdictional manipulation." *Id.* (emphasis added). Applying the nerve-center test, "if a court finds an attempt to manipulate diversity jurisdiction, such as labeling a 'bare office with a computer' as the 'headquarters' or 'nerve center,' for example, then the court 'should instead take as the nerve center' the place of actual direction, control, and coordination in the absence of such manipulation." *Id.* If the "headquarters" is simply "***the office where the corporation holds its board meetings***," that would ***not*** be the principal place of business. *Id.* (emphasis added). A corporation's description of a location as its headquarters does not, without more, settle the issue. *Id.* The Supreme Court in *Hertz* based its adoption of the nerve-center test on the "basic rationale" for diversity jurisdiction, "namely, opening the federal courts doors to those who might otherwise suffer from local prejudice against out-of-state parties," *Hertz*, 559 U.S. at 85.

Here, based on the extensive information already available, little question exists that HCperf's nerve center sits a short walk from Oil States's headquarters in downtown Houston. The "actual center of direction, control, and coordination" of HCperf's activities is on the 46th floor of the old Texaco Heritage Plaza overlooking Allen Parkway. To rely upon HCperf's use of Dutch agents to incorporate overseas instead of the place of its "actual direction, control, and coordination" would encourage litigants to "manipulate diversity jurisdiction" and exalt form over substance. *See VanLue*, 2018 U.S. Dist. LEXIS 6924 at *9. HCperf's witnesses, such as University of Texas graduate Franklin and Texas A&M alumnus Burns, will suffer zero "local prejudice" in a state-court contract dispute with their downtown neighbors at Oil States and GD Development. As such, the Court should find that no complete diversity exists and the Court should dismiss this case for lack of subject-matter jurisdiction.

**b. Alternatively, the Court should allow limited discovery of HCperf's citizenship because of its likely Texas-based membership**

GD Development and Oil States believe that HCperf's allegations of diversity jurisdiction fail for another reason: as a self-described "limited liability company," the Court looks not to HCperf's Dutch origin, but to the citizenship of each of HCperf's members, in determining whether diversity jurisdiction exists. *See* 28 U.S.C. § 1332(a); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079-80 (5th Cir. 2008).

For purposes of diversity jurisdiction, corporations are treated as citizens of the state that created them, but for all other entities – including limited liability companies – federal courts look past the citizenship of non-entities and instead look to the citizenship of each of that entity's members. *See Carden v. Arkoma Associates*, 494 U.S. 185, 188-89 (1990); *Nomura Asset Accept. Corp. v. Nomura Credit & Capital, Inc.*, 27 F. Supp. 3d 487, 490-91 (S.D.N.Y. 2014) ("'Artificial entities' – that is to say, organizations *other* than corporations – have the citizenship of *all* their members.") (quoting *Carden*, 494 U.S. at 189 (emphasis in *Nomura Asset*)).[3]

Here, shortly before closing, a sixty-six percent (66%) majority of GEODynamics, Inc.'s ownership included LRP IV and LRP V, controlled by Lime Rock. *See* <u>Exhibit T</u> ("1.4.1 GEOD Shareholder Summary.pdf"). The true citizenship of these members is not readily ascertainable. To the extent the Court denies GD Development's and Oil States's motion to dismiss on nerve-center grounds, it should permit limited jurisdictional discovery to ascertain the citizenship of HCperf's members.

---

[3] As the *Nomura Asset* court observed, *Carden* and its progeny have created "one possible exception: certain creatures of Puerto Rican civil law that are more or less identical to corporations." *Nomura Asset*, 27 F. Supp. 2d at 492 & n.4. That exception is not at issue in this dispute.

### c. Even if this Court finds that it has diversity jurisdiction, the Court should dismiss the promissory note claim for lack of ripeness

In the event the Court declines to dismiss the Complaint for lack of diversity jurisdiction, the Court should dismiss the claim on the Promissory Note because the intervening customs-duties dispute of $35 million to $70 million, and GD Development's indemnification claim against HCperf to setoff the $25 million note against those claims, modifies and extends the Promissory Note pending resolution of those customs-duties matters.

Article III of the Constitution confines federal courts to the decision of "cases" and "controversies." As the Fifth Circuit instructs, "[a] court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Lower Colo. River Auth. v. Papalote Creek II LLC*, 858 F.3d 916, 924 (5th Cir. 2017) (citations and quotations omitted). A case or controversy must be ripe for decision, meaning that it must not be premature or speculative. *United Transportation Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). An actual controversy exists where "a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000).

In a ripeness challenge, the court considers "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 833 F.2d 583, 586 (5th Cir. 1987), quoted in *Lower Colo. River Auth.*, 858 F.3d at 924.

As Judge Sim Lake observed in *Association of American Physicians & Surgeons v. U.S. Health & Human Services*, 224 F. Supp. 2d 1115, 1124 (S.D. Tex. 2002):

> Given the possibility of intervening agency action, for the court now to adjudicate plaintiffs' claims in their present pre-enforcement stage would pose a risk that the court would render an impermissible advisory opinion. *See Life Partners, Inc. v. Life Ins. Co. of N. America,* 203 F.3d 324, 325 (5th Cir. 1999) ("Federal courts do not render advisory opinions."); *United Public Workers of America v. Mitchell,* 330 U.S. 75, 89 (1947) (same).

Judge Lake's guidance, and the broader principles of the ripeness doctrine, apply squarely to HCperf's claim on the Promissory Note. Neither HCperf nor Oil States has disputed GD Development's potential obligation to pay customs duties substantially in excess of HCperf's claim under the Promissory Note, but the "intervening agency action" – that is resolution of the unpaid customs duties with the federal agencies involved – has yet to occur. If, as, and when the disputes over those duties conclude, GD Development believes that it quite possibly could owe customs duties in excess of the indebtedness under the Note and therefore not only have no obligation to pay the Note, but will have a claim against HCperf for indemnification for an amount in excess of the debt.  The Note contains the specific "modifi[cation] and exten[sion]" provision specifically for disputes such as this. A deal is a deal; if HCperf had wanted an unconditional maturity date for the indebtedness under the Note, it should have insisted upon that term at the time of the transaction (and risked not closing). Instead, HCperf stipulated that "[t]his Note is subject to the right of Maker to setoff payments due hereunder" and that following written notice of such a "Setoff Amount," the Note "will be deemed modified and extended ...." Under those terms, and the undisputed facts, the Note is not due and HCperf's claim is not ripe. The Court should dismiss the Complaint for the Note unless and until the customs-duties dispute is resolved because that is the deal the parties struck.

### 6. Conclusion and Prayer

Based on the forgoing, defendants GD Development and Oil States respectfully request the Court to dismiss HCperf's Complaint in its entirety under Rule 12(b)(1) for lack of subject-matter jurisdiction.

4823-3763-6302, v. 1

Respectfully submitted,

**BISSINGER, OSHMAN & WILLIAMS LLP**

By: _____

David K. Bissinger (Attorney-in-Charge)
Email: dbissinger@bowllp.com
State Bar No. 00790311
Federal ID No. 18150
Jason E. Williams
Email: jwilliams@bowllp.com
State Bar No. 24047113
Federal ID No. 569335
2229 San Felipe, Suite 1500
Houston, Texas 77019
Telephone: (713) 524-8811
Facsimile:  (713) 583-8347

**Counsel for Defendants**
**GD Development Corporation and**
**Oil States International, Inc.**

**<u>Certificate of Service</u>**

I hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system October 9, 2020, which caused an electronic copy of this document to be served on all counsel of record who have appeared in this matter.

_____
David K. Bissinger

4823-3763-6302, v. 1