United States District Court
Southern District of Texas
**ENTERED**
January 21, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT     SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| HCperf Holdings B.V., | § | |
|    *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-20-2969 |
| | § | |
| Oil States International, Inc., et al., | § | |
|    *Defendants*. | § | |

# Report and Recommendation

Defendants move to dismiss HCperf Holdings B.V.'s breach of contract and guaranty claims under Federal Rule of Civil Procedure 12(b)(1). (D.E. 10.) The court recommends that the motion be GRANTED.

## 1. *Background*

In 2017, HCperf Holdings B.V. (HCperf)[1] entered into a Stock Purchase Agreement with GD Development Corporation and Oil States International, Inc. (Defendants), which is the subject of this litigation. (D.E. 1-1.) HCperf filed its original complaint in federal court based on diversity jurisdiction. Defendants move to dismiss the case for lack of subject matter jurisdiction. (D.E. 10.) Defendants argue that the parties are not diverse because they are all considered Texas citizens under 28 U.S.C. 1332(c)(1).

## 2. *Legal Standards*

A court may dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact

---

[1] Formerly known as GEODynamics, B.V. (D.E. 15-1 ¶ 2; D.E. 15-5 ¶ 2.)

and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

To determine a motion under Rule 12(b)(1), the court may rely on the complaint alone, undisputed facts evidenced in the record, and/or the court's resolution of disputed facts. *St. Tammany Parish, ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009). Where a defendant's motion to dismiss is based on subject matter jurisdiction, the plaintiff bears the burden of proving the court's jurisdiction by a preponderance of the evidence. *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009).

Federal district courts have original jurisdiction over actions between citizens of different states if the amount in controversy is over $75,000. 28 U.S.C. § 1332(a). The test to determine an entity's citizenship depends on whether the entity is incorporated. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079–80 (5th Cir. 2008). HCperf is a *besloten vennootschap met beperkte aansprakelijkheid* (B.V.), or private company with limited liability, incorporated under Dutch law. (D.E. 15-3 at 122; D.E. 15-4 at 2.) For purposes of § 1332, a Dutch B.V. is treated as a corporation. *See BouMatic, LLC v. Idento Operations, BV*, 759 F.3d 790, 791 (7th Cir. 2014) (determining that the characteristics of a B.V. are equivalent to those of an American corporation); *Walker v. Bayer CropScience, LP*, No. CV 18-0656, 2018 WL 3544801, at *3 (W.D. La. June 26, 2018), *adopted by* No. CV 18-0656, 2018 WL 3546392 (W.D. La. July 23, 2018) (finding *BouMatic*'s reasoning persuasive); *Vreba-Hoff Dairy Dev., LLC v. Van Zelst*, No. 3:18CV880, 2018 WL 5435415, at *2 (N.D. Ohio Oct. 29, 2018) (same). "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

To determine a corporation's "principal place of business," the Supreme Court has rejected "highly general multifactor tests" focused on corporate activities in favor of "a sensible test that is relatively easier to apply." *Hertz Corp. v. Friend*, 559 U.S. 77, 91, 96 (2010). Under this "sensible test," a corporation's principal place of business is "the place where a corporation's officers direct, control, and

2

coordinate the corporation's activities." *Id.* at 92–93. The focus of the inquiry is on the "actual center of direction, control, and coordination, *i.e.*, the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Id.* at 93. The nerve center test "does not require courts to weigh corporate functions, assets, or revenues." *Id.* at 96; *see Leeson v. Sunbelt Furniture Xpress, Inc.*, No. 5:16-CV-64, 2017 WL 8180456, at *2 (S.D. Tex. Feb. 13, 2017) ("[C]ourts are to look to the state in which corporate decisions are made, not to the general business activities in each state in which a corporation operates."); *Balachander v. AET Inc.*, No. CIV.A. H-10-4805, 2011 WL 4500048, at *8 (S.D. Tex. Sept. 27, 2011) ("Whether [the defendant] 'operates primarily from Houston' is not relevant to the question at issue: where do the company's high-ranking decisionmakers work, set corporate policy, and direct the corporation's business activities.").

*3. Analysis*

It is undisputed that Defendants are incorporated in Delaware and that each has its principal place of business in Texas. Thus, for purposes of diversity jurisdiction, Defendants are citizens of both Delaware and Texas. The issue in this case is whether HCperf's principal place of business is in Texas, thus destroying diversity.

The undisputed evidence shows that HCperf's high-ranking officers include directors on two separate corporate boards—its Management Board and its Supervisory Board. Franciscus Damian den Ouden, one of three directors on the Management Board, declared that the Supervisory Board "serves as an advisory body that supervises and advises the Management Board." (D.E. 15-1 ¶ 8.) The Management Board is generally responsible "for representing the Company and managing its day-to-day business." *Id.* ¶ 7. The Articles of Association, attached to HCperf's response, show that the Supervisory Board determines the general course of the company's business, presides over general meetings, and supervises the policies and proceedings of managing directors. (D.E. 15-3 at 65, 68, 71, 77–78, 80, 83.) It also has the power to suspend a managing director at

3

any time. *Id.* at 74. In contrast, the Managing Board is not authorized to make substantial changes to the company's assets or liabilities, determine employment benefits and conditions, or adopt business plans, policies, or procedures without prior approval of the Supervisory Board. *Id.* at 78–79. The Managing Board cannot effectuate business operations without the direction and approval of the Supervisory Board. It is clear that the Managing Board operates the day-to-day functions of the company at the direction of and under the supervision of the Supervisory Board.

It is undisputed that all three of the directors on HCperf's Supervisory Board live and work in Houston, Texas. Den Ouden declared that only he and one other managing director live and work in Amsterdam. (D.E. 15-1 ¶ 7.) He declared that the third managing director and all three supervising directors live and work in Houston. *Id.* ¶¶ 7, 8. Online biographies attached to Defendants' motion support den Ouden's declarations. (D.E. 10-3, 10-4, 10-5, 10-6, 10-14, 10-16.) "To determine the true nerve center when command is geographically dispersed, courts have found that even though some officers reside and work in one state where the corporation's 'day-to-day' operations are conducted, if a critical mass of controlling corporate officers and/or significant corporate decisions and strategy-forming are made in a different state, the principal place of business is in the latter state." *Elizondo v. Keppel Amfels, L.L.C.*, No. 1:14-CV-220, 2015 WL 1976434, at *7 (S.D. Tex. May 1, 2015) (collecting cases).

HCperf has not presented evidence to show that the Dutch managing directors direct or control the company's business. Den Ouden did not declare that he or the other Dutch director made business decisions to direct the company. The supervising directors, all of whom are located in Houston, coordinate and direct the actions of the Managing Board. The fact that some corporate officers regularly require the approval of officers in another location supports finding that the location of the approving officers is the nerve center of the corporation. *See Uglunts v. Americare Servs., Inc.*, No. 3:12-CV-4388-D, 2013 WL 3809681 (N.D. Tex. July 23, 2013). The only evidence that directors make any business decisions in the Netherlands is the fact that HCperf has annual meetings in

4

Amsterdam. (D.E. 15-1 ¶ 10; D.E. 15-3 at 82.) This is not enough to establish that the Netherlands is the center of the company's actual direction, control, or coordination. *See Uglunts*, 2013 WL 3809681, at *4 (concluding that evidence that officers "worked and conducted business development in Florida" was not enough to establish Florida as the corporation's nerve center).

To support its argument that HCperf has its principal place of business abroad, HCperf asks the court to consider a multitude of factors, including where records are kept, where tax filings are made, and where business activities originate. HCperf's response to the motion to dismiss relies on cases that pre-date the Supreme Court's decision in *Hertz*. HCperf's argument focuses on tests overruled by *Hertz*. HCperf has not shown that the Netherlands is its principal place of business or that the parties are diverse. Because the court's jurisdiction relies solely on diversity of citizenship and HCperf has failed to meet its burden, the court recommends that Defendants' motion to dismiss be granted.

*4. Conclusion*

The court recommends that Defendants' motion to dismiss (D.E. 10) be GRANTED and that HCperf's claims be dismissed without prejudice to refiling in a court having jurisdiction.

The parties have fourteen days from service of this memorandum and recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on January 21, 2021.

_____
Peter Bray
United States Magistrate Judge